No. 18,214.

W. C. Stout, *Appellee*, v. J. R. Bolin et al., doing business as Bolin & Hopkins, *Appellants*.

SYLLABUS BY THE COURT.

1. Sale—*Cattle—Contract Transferred by Purchaser—Original Contract Abandoned—Agency of Transferee Not Proven— Erroneous Instructions.* The defendants contracted with plaintiff for certain cattle by the pound, and shortly thereafter transferred their interest in the deal to another, who thereupon agreed with the plaintiff to take the cattle at so much a head, and upon the conclusion of such agreement, made the first payment towards their purchase price. The plaintiff claimed that such other party was acting as agent of the defendants,

which was denied, the only evidence of agency, if any, being circumstantial or by way of inference, and not direct. The court charged, in substance, among other things, that if the contract between plaintiff and defendants was never abandoned or canceled and the defendants were to be responsible to the plaintiff thereunder, the plaintiff could recover. *Held,* to be misleading, and therefore error.

2. SAME — *Answer of Jury to Special Question — Instruction.* In answer to a question by the jury whether turning over the cattle at a fixed price a head annulled the contract to take them by the pound, the court instructed, in effect, that a substantial compliance with the terms of the contract would be sufficient. *Held,* error, as the latter contract, if made, would of necessity annul the former.

Appeal from Seward district court; WILLIAM H. THOMPSON, judge. Opinion filed November 14, 1914. Reversed.

C. V. *Manatt,* of Liberal, R. W. *Blair,* C. A. *Magaw,* and T. M. *Lillard,* all of Topeka, for the appellants.

F. S. *Macy,* of Liberal, for the appellee.

The opinion of the court was delivered by

WEST, J.: Bolin and Hopkins were doing business at Liberal, and the plaintiff, W. C. Stout, at Arkalon. Early in November, 1909, Mr. Bolin called on plaintiff to look at some cattle owned by the latter on his ranch, with the result that Bolin bargained for 100 of the 150 head at four and one-half cents a pound, the cattle to be selected on the following Wednesday, this being Saturday. On the next Tuesday Court Brown called at the plaintiff's store with one Frank Griffith, a stranger, and asked to be connected by telephone with Mr. Bolin at Liberal. A long-distance conversation ensued, the effect of which was that Bolin, who had purchased seventy-five head from a Mr. Forbes, was to step from under both contracts, in favor of Griffith, in consideration of $100 profit on the two deals and a return of $500 he had paid on the Forbes cattle. Brown advised Stout that they had bought the Forbes cattle and his

cattle, and that Bolin authorized turning the cattle over to Griffith, and Brown suggested that Griffith and Stout get together and see if they could guess off the weight. After some conversation it was agreed between Stout and Griffith that the cattle were to be taken at forty dollars a head, and after starting to the depot it was suggested to Griffith that a payment ought to be made on the cattle, and a check for $500 on a bank at Dalhart was turned over, bearing the statement, "Payment for 100 2 yr. steers, $40.00 a head." Later the remaining $3500 was received from Brown and the cattle shipped out in his name. The check came back protested, and when Stout notified Bolin to that effect Bolin replied that his check for $600 had also been dishonored, but he thought the matter would be settled, and if not adjusted within a week or ten days he would go to the commission house and see about it. Later he did go, and at his suggestion was handed the $500 check, and returned with a check for $1100 in lieu of the two, which likewise went to protest. Stout then sued Bolin and Hopkins for $500, alleging that they had first bargained for the cattle at four and one-half cents a pond and later changed the agreement to one at $40 a head, and alleging that Griffith was the agent or purchaser of the defendants, and asked damages and protest fees in addition to the $500. The answer alleged the mutual abandonment of the agreement to take the cattle by weight and a new contract between Stout and Griffith at $40 a head, and a supplemental answer contained a verified denial that Griffith was at any time their agent or employee. Brown testified that he was not acting on behalf of the defendants. Griffith testified that he was at all times acting for himself and at no time was he agent for the defendants, both of whom testified that no agency existed. A witness named Romer testified that the defendants at one time offered to sell him these cattle at five cents a pound, and later said they cost them four and one-half cents, but they lumped them off at

$40 a head, and afterwards Hopkins said that "he had a man up there that sold or made that deal for them." It was shown that Bolin did not deny telling Brown over the phone to direct Stout to turn the cattle over to Griffith, but aside from whatever inferences are to be drawn from the facts and circumstances appearing from the evidence there is no testimony tending to show an agency, and certainly none indicating an agency to purchase the cattle on account of the defendants by the head and not by the pound.

The jury were told, among other things, that if Griffith through Brown acted for the defendants in carrying out the terms of the contract between the plaintiff and the defendants, "or that he was a purchaser of the cattle from the defendants, and that the plaintiff was authorized and directed by the defendants, or either of them, through said Brown, to turn the said cattle over to the said Griffith instead of to them, and that the contract between the plaintiff and defendants was never abandoned or canceled, and that defendants were to be responsible to the plaintiff thereunder," then the plaintiff was entitled to recover. Of course, if Griffith through Brown acted for the defendants in carrying out the terms of the contract they had made with Stout they would be bound, but if Griffith was a purchaser of the cattle from the defendants, and afterwards made a new contract with the plaintiff to take them by the head instead of taking them by weight, it is impossible to see how the contract between the plaintiff and defendants could fail to have been adandoned or how they were to be responsible to the plaintiff thereunder. A subsequent proper instruction was that if a new contract was made between the plaintiff and Griffith, to whom the cattle were delivered for his benefit, then the plaintiff could not recover. The jury asked of the court the question, "Does the fact of the turning of said cattle over for $40 per head through a third party, instead of delivering them for four and one-half cents per pound, as the contract calls for,

annul said contract?" It is apparent that if the contract for four and one-half cents a pound should be superseded by another for $40 per head, the inevitable result would be to annul the former contract, but the answer was that "in determining the question as to whether or not the contract in question has been complied with by either of the parties, the law does not require that the same shall be performed strictly and to the letter in all of its details, but that there shall be simply a substantial compliance with the terms thereof in order to carry out the intention of both parties to the contract."

We think that in both quoted instructions there was a failure to state the law correctly as applied to the facts before the jury, and that in view of the evidence shown by the record it was highly essential that the points covered by the two instructions in question be clearly and properly covered.

The judgment is reversed and the cause remanded for further proceedings.